Filed 7/15/14  P. v. Sandoval CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D063815 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS246570) |
| JOE SANDOVAL, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Ana L. Espana, Judge.  Affirmed.


Kessler & Seecof and Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Quisteen Shum and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury found Joe Sandoval guilty of 12 counts of committing lewd or lascivious acts upon two children under 14 years of age (counts 1-3 as to victim C.R. and counts 4-12 as to victim L.G.)[1] under Penal Code section 288, subdivision (a).[2]  The jury found true special allegations Sandoval was convicted in this case of committing lewd or lascivious acts against more than one victim.  (§ 667.61, subds. (b), (c) & (e).)  It also found true special allegations of substantial sexual conduct with a child under 14 years of age.  (§ 1203.066, subd. (a)(8).)  He was sentenced to an aggregate term of 30 years to life based on two consecutive 15-years-to-life terms for two counts and concurrent 15-years-to-life terms for the remaining counts.

Sandoval contends on appeal the court erred by (1) by failing to instruct on battery as a lesser included offense of a lewd act upon a child and (2) declining to strike the testimony of Brenda G. (the mother) about the victims contracting urinary tract infections during the time Sandoval lived with them.  Finding no merit in either contention, we affirm the judgment.

---

[1]     To protect the identities of the minors, we use initials.  We intend no disrespect.

[2]     All further statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

*A.    Prosecution Evidence*

Sandoval began a relationship with the mother of C.R. and L.G. in approximately 2003 or 2004.  About a year into their relationship, the mother and Sandoval became engaged and began living together.  Their relationship ended in approximately 2006.

When they were living together in a Chula Vista apartment, the mother worked a shift from 3:00 p.m. to 11:30 p.m.  Sandoval watched C.R. (then age six) and L.G. (then age four or five) in the evenings while their mother worked.  The mother thought Sandoval's relationship with her girls was good.  They called him "Dad."

C.R. testified Sandoval molested her when she was six or seven.  He touched her vagina and her buttocks with his hands.  He would do this in the room she shared with her sister or in her mother's room while her mother was working.  He would touch her vagina under her clothes.  She felt angry and sad because she knew he should not touch her this way.

Sandoval would also smack C.R.'s buttocks when she would walk by him.  C.R. felt sad when he would smack her buttocks because she did not think she did anything wrong.

Sandoval kissed C.R. on the lips in a way that made her feel weird because most of her family members kissed her on the cheek.  He would do this behind closed doors when they were alone.  She did not know exactly how many times these things happened, but it was more than once.

C.R. did not tell anyone because she was embarrassed and she was scared Sandoval would hurt her family. She did not want to tell her mother because she was afraid her mother would not like her anymore.

L.G. testified Sandoval would take C.R. behind the door when their mother was at work, but she did not know what happened. Then Sandoval would take L.G., then age four or five, in the room and lock the door. He touched L.G.'s vagina with his hand. Although she denied his fingers would go inside, she testified it hurt. Sandoval would kiss L.G. on the lips like an adult kiss, which made her feel horrible because she knew it was wrong. He also touched her anus with his finger. It would hurt because he had a ring on his finger.

During a forensic interview conducted with a social worker at Children's Hospital after the initial disclosure in 2011, L.G. described what Sandoval would do to her and C.R. using the Spanish word "sexo." She said Sandoval would have "sexo" with her and "touch parts that were not supposed to be touched." L.G. reported her underwear would become wet when Sandoval got in the bed. She believed the same thing happened to her sister because she saw C.R.'s wet underwear in the laundry.

L.G. told a social worker the underwear would get wet because Sandoval put his "lower" or his "pee-pee" part into her "pee-pee" part. She did not recall seeing his "lower" or "pee-pee" part, but said it was hairy. At trial, L.G. recalled saying this to the social worker, but then said she did not know if he touched her body with his penis.

4

Sandoval told L.G. to lick his finger like a lollipop. Sandoval also touched her shoulder and her chest under her clothes. L.G. did not tell anyone because she was scared of Sandoval.

L.G. first told her mother about the incidents in 2011, when her mother was preparing to marry her current husband. L.G. (then nine years old) said Sandoval used to give her and C.R. kisses. When the mother asked if they were father-daughter type of kisses, L.G. acted nervous and called C.R. to the room. L.G. said they were like mommy-daddy kisses and indicated by opening her mouth. C.R. (then 11 years old) initially denied knowing what L.G. was talking about, but turned flush red as though she was embarrassed. When the mother asked if anything else happened, L.G. said he touched them. C.R. started to cry. Both girls reported Sandoval touched them in parts he was not supposed to touch them. They then went to the Chula Vista police department to report the incidents.

The girls did not tell their mother earlier because they were scared. C.R. testified she and L.G. did not talk about it before L.G. disclosed to their mother. C.R. denied knowing what happened to L.G. C.R. never told L.G. specifically what happened to her. When they told their mother, C.R. felt ashamed, embarrassed and scared for the safety of her family.

Looking back, the mother recalled L.G. had night sweats while they were living with Sandoval in Chula Vista. Many times, the girls would not want their mother to go to work or would ask her to come home early. After the mother and Sandoval broke up, the girls seemed concerned they would get back together.

5

They also had urinary tract infections and difficulty urinating at night. The mother thought they were not cleaning themselves correctly. The mother took L.G. to a mobile clinic, but she was not examined. The nurse thought it was from not wiping correctly or from bubble baths. The mother did not report the urinary tract infections to the police when they initially reported the incidents because she did not think anything of it, but she has since learned more about sexual abuse by reading articles on the Internet. No doctor documented damage to the girls' private areas during annual physical exams.

A Chula Vista police officer took the initial report on January 30, 2011. C.R. reported Sandoval touched her on a few occasions. She was timid and not forthcoming with her answers. She was quiet, gave one-word answers and did not want to look the officer in the eye. She said Sandoval touched her vaginal and anal areas with his hands or fingers under her clothing on two or three occasions. He also kissed her hard a few times. C.R. reported she never told anyone because she was afraid and because Sandoval told her not to tell anyone.

L.G. was more talkative with the police officer. She answered questions thoroughly and intelligently. She reported when Sandoval would watch them at night he would separate them into different rooms. He would come into the room and rub L.G.'s vaginal area under her clothing. He also would stick his fingers in her anus. She did not tell anyone earlier because she was afraid.

B.    *Defense Evidence*

Two women, Sandoval's current wife and a former girlfriend, testified they observed Sandoval around children on many occasions and did not see unusual or

6

inappropriate behavior. Sandoval's teenage cousin testified Sandoval lived with her family when she was a year old. He never tried to touch her or made her feel uncomfortable. Another family friend testified she observed Sandoval around her own children and never felt he was inappropriate. She also testified she saw him with C.R. and L.G. They seemed happy, not scared or as though he was treating them inappropriately.

A neuropsychologist, Dr. Francisco Gomez, testified he conducted a forensic evaluation at the request of defense counsel to assess whether Sandoval meets the clinical diagnosis of pedophilia. A pedophilia diagnosis requires a finding of an uncontrollable urge to have sexual activity with a child under 13 years of age. The urge becomes the main focus of interest in a person's life. Dr. Gomez interviewed Sandoval, administered a battery of tests and reviewed criminal reports and the preliminary hearing transcript. He concluded Sandoval does not meet the clinical criteria for a pedophilia diagnosis. He also testified, however, this opinion does not mean Sandoval did not commit the charged offenses.

*C.*      *Jury Verdicts and Sentence*

The jury found Sandoval guilty on all 12 counts of lewd acts upon a child (§ 288, subd. (a)).[3] It found true special allegations in all counts of a conviction in this case of committing an offense against more than one victim (§ 667.61, subds. (b), (c), & (e)). The jury also found true allegations in counts 3 and counts 8 through 12 of substantial sexual contact with a child under 14 years of age (§ 1203.066, subd. (a)(8)).

The court sentenced Sandoval to be committed to an aggregate term of 30 years to life with credit for time served of 180 days. The court imposed the mandatory term of 15 years to life for count 1 with the special allegations. The court imposed terms of 15 years to life for counts 2 and 3 to be concurrent with count 1. The court imposed a term of 15 years to life for count 4 with special allegations, to be consecutive to count 1. The court imposed terms of 15 years to life for the remaining counts to be served concurrently with count 4.

---

3      Counts 1 and 2 allege lewd act upon a child for the first and last times between January 1, 2003, and December 31, 2006, the defendant kissed C.R. on the mouth. Count 3 alleges lewd act upon a child for the first time the defendant touched C.R.'s vagina.

Counts 4 and 5 allege lewd act upon a child for the first and last times the defendant kissed L.G. on the mouth. Counts 6 and 7 allege lewd act upon a child for the first and last times the defendant caused L.G. to put her tongue on his finger. Count 8 alleges lewd act upon a child for the touching of defendant's penis on L.G.'s vagina. Counts 9 and 10 allege lewd act upon a child for the first and last times the defendant touched his finger to L.G.'s anal opening. Counts 11 and 12 allege lewd act upon a child for the first and last times the defendant touched L.G.'s vagina.

DISCUSSION

I

*The Court Had No Duty to Instruct on Battery*

Sandoval's primary contention on appeal is the court failed to sua sponte instruct the jury on a lesser included offense of battery. We conclude the court had no such duty.

The trial court has a sua sponte duty to instruct on a lesser offense "necessarily included" in the charged offense where there is substantial evidence from which a jury could reasonably find the defendant guilty of only the lesser offense. (*People v. Birks* (1998) 19 Cal.4th 108, 118.) "Substantial evidence in this context is evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense. [Citation.] 'The rule's purpose is . . . to assure, in the interest of justice, the most accurate possible verdict encompassed by the charge and supported by the evidence.' [Citation.] In light of this purpose, the court need instruct the jury on a lesser included offense only '[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of' the lesser offense." (*People v. Shockley* (2013) 58 Cal.4th 400, 403-404 (*Shockley*).)

A lesser offense is included in a greater offense "if *either* (1) the greater offense, as defined by statute, cannot be committed without also committing the lesser (the elements test), *or* (2) the language of the accusatory pleading encompasses all the elements of the lesser offense (the accusatory pleading test)." (*People v. Parson* (2008) 44 Cal.4th 332, 349.) Where the charging allegations echo the statutory language, the

9

test is the same whether commission of the greater offense necessarily requires commission of the lesser offense. (*People v. Wolcott* (1983) 34 Cal.3d 92, 99.)

While this appeal was pending, the Supreme Court held "battery is not a lesser included offense of lewd conduct." (*Shockley*, *supra*, 58 Cal.4th at p. 406.) The Supreme Court explained if "guilt of battery is predicated on guilt of lewd conduct—i.e., if a person is guilty of battery *because* that person committed lewd conduct—neither crime would have an element not also required of the other." (*Id.* at p. 405.) In other words, such a battery "is not a *lesser* and *included* offense of lewd conduct but is essentially the *identical* offense." (*Ibid.*) Therefore, "if only lewd conduct is charged, the trial court has no duty to instruct on battery as a lesser included offense." (*Shockley,* at p. 406*.*)

Sandoval recognizes we are bound to follow the decision of the Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Nevertheless, Sandoval argues we should analyze the issue under the accusatory pleading standard rather than under the elements standard, which was the focus of the Supreme Court in *Shockley* because the information in that case tracked the language of section 288, subdivision (a) without additional factual allegations. (*Shockley*, *supra*, 58 Cal.4th at p. 404.)

"Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227-1228.) Sandoval argues the accusatory pleading standard is appropriate here because the information not only

10

tracks the language of section 288, subdivision (a), but also includes specific allegations of the alleged wrongful acts for each count.

Sandoval specifically draws our attention to counts 9 and 10, which identify the lewd conduct as "finger to anal opening."[4] He argues "[g]uilt of battery for committing these specifically alleged acts would not necessarily have been predicated on whether the acts were done with lewd intent" because the "alleged act of inserting his finger into the victim's anus was a harmful or offensive act in and of itself, and did not simply become harmful or offensive because appellant allegedly did so with lewd intent." On this basis, Sandoval argues the trial court erred when it did not provide the jury with instructions to allow the jury to find him guilty of only simple battery. We are not persuaded.

The information in this case does not allege specific facts or actions beyond the elements of the charged offense of lewd act upon a child. After reciting the statutory language, the information merely identifies where or how the offensive touching occurred for each child as charged for each count.

Counts 9 and 10 merely specify the lewd conduct occurred by "finger to anal opening." Contrary to Sandoval's assertion, the information does not allege the conduct included insertion of a finger into the anal opening. The words "finger to anal opening"

---

4    Count 9 alleges in pertinent part: "On or about and between January 1, 2003 and December 31, 2006, [Sandoval] did willfully and lewdly commit a lewd and lascivious act upon and with the body and any part and member thereof of [L.G.] a child under the age of fourteen years, with the intent of arousing, appealing to and gratifying the lust, passions and sexual desires of the said defendant and the said child (to wit: First time: finger to anal opening), in violation of [section 288, subdivision (a)]." Count 10 is identical with the exception of alleging the last time the touching occurred in this time period.

11

could identify an innocent non-harmful touching, such as what could occur in the act of bathing a child or changing a diaper. Therefore, other than the allegations the touching occurred with lewd intent, the factual descriptions in the accusatory pleading do not actually allege the elements necessary to support a charge of battery based upon "willful and unlawful use of force or violence upon the person of another." (§ 242) In other words, as pled, the only way the accusatory pleading here could constitute battery is if the allegation of lewd intent supplies the element of unlawful force.

As in *Shockley,* the "jury could never find the defendant not guilty of lewd conduct (perhaps because of the lack of lewd intent), but guilty of battery, without finding some *other* element of battery not included within lewd conduct." (*Shockley*, *supra*, 58 Cal.4th at p. 405.) The Supreme Court observed a battery can be committed without committing a lewd act if a child is touched "nonconsensually and harmfully but without lewd intent." (*Ibid.*) However, the court explained, "[i]n this situation, an element of the battery, the unwanted use of force, would not be included within the elements of lewd conduct. It would be a distinct requirement." (*Ibid.*)

As the Supreme Court stated, the prosecution may choose to charge both lewd conduct and battery if the evidence supports both charges. (*Shockley*, *supra*, 58 Cal.4th at pp. 405-406.) But if only lewd conduct is charged, a defendant may assert a complete defense to this charge by convincing the jury there was no lewd intent. "Charging only lewd conduct would not provide the defendant with notice of the need to defend additionally against a battery charged based on an offensive touching not included within the elements of lewd conduct." (*Id.* at p. 406.)

12

Accordingly, the Supreme Court decision in *Shockley*, *supra*, 58 Cal.4th 400 compels the conclusion the trial court had no duty to give a lesser included offense instruction. Under the accusatory pleading standard, the pleading does not encompass the elements of battery alone.

## II

### *The Court Did Not Abuse Its Discretion in Denying the Request to Strike Testimony Regarding Urinary Tract Infections*

Sandoval's second contention is the court erred in denying the motion to strike the mother's testimony about the minors contracting urinary tract infections. Sandoval argues this testimony was irrelevant and prejudicial. We disagree and conclude the trial court did not abuse its discretion.

Trial court rulings on the admission and exclusion of evidence, including motions to strike testimony, are reviewed for abuse of discretion. (*People v. Thompson* (2010) 49 Cal.4th 79, 128, 130.) We will not disturb such rulings on appeal unless the appellant shows the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner resulting in a manifest miscarriage of justice. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

In this case, the mother testified she now recognizes some things were not right or were "off" with her daughters during the period of time they lived with Sandoval, even though she did not recognize it at the time. When asked to explain, the mother identified a number of issues, one of which was both girls had urinary tract infections and difficulty urinating at night. The mother testified she took the girls to a clinic where a nurse said

13

the infections could be caused by improper cleaning or bubble baths. The mother did not follow-up. No doctor discovered damage to the minors' private areas during annual physical examinations. The mother admitted she did not report the infections to the police because she did not think anything of it at first. Subsequently, the mother has done Internet research about victims of sexual abuse.

When defense counsel objected and moved to strike the testimony, the court allowed the testimony to stand and observed the infections apparently became relevant to the mother after doing some research. In a later discussion about proposed rebuttal evidence, the court clarified the testimony about urinary tract infections was in response to a question about whether the mother observed anything different, in hindsight, about the girls during the relevant time period. The court stated, "[the mother] talked about some behavior changes, acting out, and then she talked about the urinary tract infections. So she, in her own mind is connected to what happened. [¶] And she also testified, I believe, that she knows there are other causes she talked about. She thought maybe she wasn't keeping them clean enough. And it all goes to weight, in her mind, in response to a question. [¶] I felt that was fine. It was relevant. It was, again, her perspective of what was going on with her own children now she has heard what the kids have to say."

Relevant evidence has some "tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) The trial court did not abuse its discretion in admitting this as relevant evidence. The mother identified these infections, among other things, as something unusual about the minors

14

during the relevant time period. It is not unreasonable for the superior court to have concluded the testimony had some tendency in reason to prove the disputed material fact.

We cannot conclude the admission of the mother's brief comment about urinary tract infections was prejudicial to such an extent a different verdict was reasonably probable without the evidence. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) The defense cross-examined the mother about her testimony. Defense counsel pointed out she did not initially report these infections to the police and there are no medical records corroborating the infections or damage to the genitals of the minors. The mother acknowledged the possible relevance of these infections only occurred to her after she read Internet materials about sexual abuse. She also acknowledged factors other than sexual contact can cause urinary tract infections. As the trial court correctly noted, this goes to the weight of the evidence.

In addition, the court permitted the defense to submit "rebuttal" testimony about the size of Sandoval's penis. The defense argued this evidence was necessary to counter the testimony about urinary tract infections and because one would expect damage if a five-year-old girl is penetrated with an average adult male penis, but there are no medical records in this case even though the mother testified they went to the doctor. Both Sandoval's current wife and his ex-girlfriend were allowed to testify they were intimate with Sandoval and considered him to have an average-sized penis. The defense argued to the jury about the absence of medical records and the damage one would expect if an average adult male penis penetrated a five-year-old's vagina.

Sandoval argues the evidence was prejudicial because it bolstered the testimony of both girls, which he characterizes as "not definitive." We cannot agree. The record shows the girls were reluctant to testify at trial. L.G., in particular, was uncomfortable testifying in front of the jury, Sandoval, and his family. However, although there were some minor inconsistencies, the descriptions both girls gave of the lewd acts were generally consistent from the time they first reported the incidents in January 2011 through trial more than a year later. Under these circumstances, we conclude there was no prejudicial abuse of discretion.

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

O'ROURKE, J.

16